[No. 6191–4–III.  Division Three.  May 7, 1985.]

IVY CLUB INVESTORS LIMITED PARTNERSHIP, ET AL, *Respondents,* v. THE CITY OF KENNEWICK, *Appellant.*

*William L. Cameron, City Attorney,* for appellant.

*James K. Hayner* and *Minnick, Hayner & Zagelow, P.S.,* for respondents.

MUNSON, J.—The City of Kennewick appeals the granting of Ivy Club Investors Limited Partnership's (Ivy Club) motion for summary judgment. The issues are: (1) Was the City entitled to condition its approval of the Ivy Club's conversion of an apartment complex to condominiums upon payment of a park fee? (2) Was joinder of the purchasers required in order to restore the City to the status quo, assuming the park fee was invalid? (3) Did the trial court err in awarding the Ivy Club its costs and attorney fees under RCW 64.40.020(2)? We affirm.

The Ivy Club purchased a 5–year–old apartment complex, and in 1983, approached the City about converting the complex into condominiums. At the same time, the Ivy Club applied for a variance in the number of required parking spaces and submitted its site plan for approval.

The city planning director conferred with the park and recreation commission about the adequacy of recreational facilities at the apartment site. The commission recommended acceptance of a fee in lieu of any dedication of land for park facilities. These funds would be used for capital improvements to a park near the apartments.

The planning director notified the Ivy Club of the City's requirements for converting apartments to condominiums. The planning director stated section 17.02.040 and chapter 17.100 of the Kennewick Municipal Code (KMC) required the dedication of land for park facilities before the pro-

posed conversion could be approved. However, the planning director went on to state:

> Dedication of land is probably not appropriate and due to a recent amendment to the State Law, the City cannot require the payment of fees in lieu of dedication. However, the law does provide for voluntary agreement to pay the fees. The Benton County Assessor has assessed your property (land value) at $1.10644 per square foot. This comes to a possible fee payment of $23,327.15.

The city board of adjustment approved the variance requested by the Ivy Club. A site plan approval permit was issued but the final approval of the conversion plan was conditioned upon the Ivy Club's compliance with KMC 17.02, including payment of the park fee.

The Kennewick City Council approved the planning director's request to enter into a contract with the Ivy Club concerning the park fee. Copies of this proposed contract were sent to the Ivy Club for signature. After making certain changes in the agreement, the Ivy Club executed the contract and it was accepted by the planning director.

The Ivy Club later attempted to record its declaration of condominiums without paying the fee, but was unsuccessful. Thereafter, it paid the $23,327.15 park fee, and the City approved the declaration of condominiums.

The city attorney responded to the Ivy Club's protest by offering to refund the park fee if its enabling declaration was withdrawn. The Ivy Club then made a formal request to the city council for the return of the fee. The Ivy Club stated it would not withdraw its enabling declaration and it intended to continue selling its condominiums.

Following a hearing, the city council accepted the city attorney's recommendation not to refund the park fee. The Ivy Club then commenced this action seeking a refund of the $23,327.15 fee. Both parties moved for summary judgment. The City also moved to join the purchasers of the condominium units.

The trial court granted the Ivy Club's motion for summary judgment while denying the City's motions. In its oral

decision, the court stated the City was not entitled to collect the fee, since the conversion involved merely the transfer of ownership of an existing building. However, if the structure had not already been in existence, the City's land use requirements and other conditions, such as the fee in lieu of dedication, would have been proper. The court awarded the Ivy Club its costs and attorney fees under RCW 64.40.020(2). This appeal followed.

The central issue is whether the City was authorized to charge the park fee. The City contends its park dedication requirements are a valid exercise of its police power, and the imposition of the fee is a proper method of accomplishing its objective to provide park facilities to the public. The City also cites RCW 82.02.020 as specifically authorizing the voluntary payment of a fee in lieu of a dedication of land.

It further claims the Ivy Club was not privileged to execute the park fee contract for purposes of expediency, and then repudiate it, after the City had detrimentally relied on that agreement in approving the Ivy Club's enabling declaration; to sanction this action is to countenance the perpetration of a fraud upon the public. The City also claims the Ivy Club failed to exhaust its administrative remedies prior to executing the fee agreement and is therefore barred from relief, notwithstanding the legality of the fee.

■ Article 7, section 9, and article 11, section 12 of the Washington State Constitution permit the Legislature to grant municipalities the power to levy and collect taxes for local purposes. Article 7, section 9, provides:

> The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same.

Similarly, article 11, section 12, states:

The legislature shall have no power to impose taxes upon counties, cities, towns or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof, the power to assess and collect taxes for such purposes.

These constitutional provisions are not self-executing. *King Cy. v. Algona,* 101 Wn.2d 789, 791, 681 P.2d 1281 (1984). The Supreme Court has consistently held municipalities must have express authority, either constitutional or legislative, to levy taxes. *Citizens for Financially Responsible Gov't v. Spokane,* 99 Wn.2d 339, 343, 662 P.2d 845 (1983); *Hillis Homes, Inc. v. Snohomish Cy.,* 97 Wn.2d 804, 809, 650 P.2d 193 (1982); *Carkonen v. Williams,* 76 Wn.2d 617, 627, 458 P.2d 280 (1969); *Pacific First Fed. Sav. & Loan Ass'n v. Pierce Cy.,* 27 Wn.2d 347, 352, 178 P.2d 351 (1947); *State ex rel. Sch. Dist. 37 v. Clark Cy.,* 177 Wash. 314, 322, 31 P.2d 897 (1934). If the Legislature has not authorized the tax, it is invalid no matter how necessary it might be. *Chemical Bank v. WPPSS,* 99 Wn.2d 772, 792, 666 P.2d 329 (1983); *Hillis Homes, Inc. v. Snohomish Cy., supra* at 808.

Further, if there is any doubt about a grant of power, it must be denied. *Chemical Bank v. WPPSS, supra* at 792; *Port of Seattle v. State Utils. & Transp. Comm'n,* 92 Wn.2d 789, 794–95, 597 P.2d 383 (1979). Although article 11, section 11, delegates extensive police power to municipalities to "make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws", this authority does not comprehend the power to tax. *Hillis Homes, Inc. v. Snohomish Cy., supra* at 809. *See also Chemical Bank v. WPPSS,* 102 Wn.2d 874, 916–17, 691 P.2d 524 (1984).

Initially, the question arises whether the park fee imposed by the City constitutes a tax. In *Hillis Homes, Inc. v. Snohomish Cy., supra* at 809, the court stated:

Taxes are imposed to supply revenue for the public treasury. *State ex rel. Nettleton v. Case,* 39 Wash. 177, 182,

81 P. 554 (1905). Not all demands for payment made by a governmental body are taxes. We have pointed out that "if the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed." *Spokane v. Spokane Police Guild,* 87 Wn.2d 457, 461, 553 P.2d 1316 (1976). The characterization of the development fees will, therefore, turn on a determination of the primary purpose of the fees. If the fees are merely tools in the regulation of land subdivision, they are not taxes. If, on the other hand, the primary purpose of the fees is to raise money, the fees are not regulatory, but fiscal, and they are taxes.

*See also Miller v. Port Angeles,* 38 Wn. App. 904, 910, 691 P.2d 229 (1984).

This park fee was not voluntary; the City's approval of the conversion was strictly conditioned upon the Ivy Club's payment of the fee.[1] The park fee constitutes a tax under *Hillis* because the City's primary purpose in imposing the fee was to raise revenue for park improvements. The question remains whether this tax is expressly authorized.

RCW 82.02.020, as amended in 1982, supersedes the decision in *Hillis Homes, Inc. v. Snohomish Cy., supra,* that governmental bodies have no express authority to impose a development fee or tax as a condition of subdivision approval under RCW 58.17.110. However, the parties strongly disagree whether RCW 82.02.020 is limited to developments governed by RCW 58.17. RCW 82.02.020 states, in part:

Except only as expressly provided in RCW 67.28.180 and 67.28.190 and the provisions of chapter 82.14 RCW, the state preempts the field of imposing taxes upon retail

---

[1]The planning director's letter dated March 11, 1983, states in part: "However, the law does provide for voluntary agreement to pay the fees. The Benton County Assessor has assessed your property (land value) at $1.10644 per square foot. This comes to a possible fee payment of $23,327.15.

". . . In the absence of some agreement to mitigate the park situation, I may not be able to approve the conversion."

Similarly, the planning director's letter dated May 19, 1983, states in part:

"As stated in Section 3, of your rewritten contract, I will approve the conversion upon receipt of $23,327.15."

sales of tangible personal property, the use of tangible personal property, parimutuel wagering authorized pursuant to RCW 67.16.060, conveyances, and cigarettes, and no county, town, or other municipal subdivision shall have the right to impose taxes of that nature. No county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the construction or reconstruction of residential buildings, commercial buildings, industrial buildings, or on any other building or building space or appurtenance thereto, or on the development, subdivision, classification, or reclassification of land. However, this section does not preclude dedications of land or easements pursuant to RCW 58.17.110 within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.

This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a payment in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat: . . .

■ The authority to tax under this statute is explicitly conditioned upon the applicability of RCW 58.17.110. That statute provides that "[d]edication of land to any public body, may be required as a condition of subdivision approval . . ." However, RCW 58.17.040(7) states the provisions of RCW 58.17 have no application to: "[a] division which is made by subjecting a portion of a parcel or tract of land to chapter 64.32 RCW if a city, town, or county has approved a binding site plan for all of such land." RCW 64.32, the Horizontal Property Regimes Act, pertains to condominiums.

Here, the apartment complex had been in existence 5 years prior to the proposed conversion; all land use requirements had been satisfied at the time of its construction. Therefore, the provisions of RCW 58.17 do not apply to this case. RCW 58.17.040(7). Since the taxing authority under RCW 82.02.020 concerns only dedications or fees in

lieu of dedications of land under RCW 58.17.110, it follows the City was without express authority to impose the park fee as a condition to approving the conversion to condominiums. The trial court did not err in granting the Ivy Club's motion for summary judgment. The Ivy Club was entitled to a refund. *See Hillis Homes, Inc. v. Snohomish Cy., supra* at 811.

Since the park fee was invalid, the City had no right to condition its approval upon payment of the fee. The joinder of the condominium purchasers was not required to afford full relief to those who were already parties to the action. CR 19(a).

Finally, the City contends the trial court erred in awarding the Ivy Club its costs and attorney fees under RCW 64.40.020(2). The Ivy Club's action was filed within 30 days of the City's refusal to refund the fee, which would have been its last administrative remedy. RCW 64.40.030. The imposition of the park fee constituted an "act" for purposes of RCW 64.40, regardless of whether the Ivy Club signed the park fee contract. The execution of that agreement and subsequent payment of the fee was compelled by the City's refusal to approve the conversion. *See Hillis Homes, Inc. v. Snohomish Cy., supra* at 811; *Great Northern Ry. v. State*, 200 Wash. 392, 420–24, 93 P.2d 694 (1939). In addition, the planning director's initial letter to the Ivy Club concerning conversion indicates the City was aware of its tenuous authority to impose the fee. *See* RCW 64.40.020(1).

The trial court properly awarded the Ivy Club its costs and attorney fees under RCW 64.40.020(2). Under the same statute, the Ivy Club is awarded $636 attorney fees on appeal as requested in its affidavit. The City's similar request is denied.

Summary judgment is affirmed.

GREEN, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court July 26, 1985.